UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------------------X

| | |
|---|---|
| SANDRA DIAZ, | COMPLAINT |
| Plaintiff, | 06-CV-7718 (RLC) |
| - against - | JURY TRIAL DEMANDED |
| MEMORIAL SLOAN-KETTERING CANCER CENTER, | ECF CASE |
| Defendant. | |

-----------------------------------------------------------------------------------X

Sandra Diaz, by her attorney, Noah A. Kinigstein complains of the defendant

as follows:

## JURISDICTION

1. Jurisdiction is conferred on this court by 28 U.S.C. § 1331, 42 U.S.C. § 2000e-5(f)(1) and 42 U.S.C. § 1981. In addition, there are causes of action under New York law which this court has jurisdiction under the court's pendent and supplemental jurisdiction under 28 U.S.C. §1367.

2. All the conditions precedent to the filing of this action have been met by the Plaintiff Sandra Diaz, in that she has filed a timely complaint with the Equal Employment Opportunity Commission, and has filed this complaint within ninety days of receiving the Right-To-Sue letter.

1

## PARTIES

3.Sandra Diaz is African American. She was born on November 29, 1967. Her address is 3185 Layton Avenue, Bronx, NY 10465. Ms. Diaz has a Bachelor of Science in Business Administration and a Masters in Healthcare Administration. Ms. Diaz is dark-skinned.

4. Defendant Memorial Sloan-Kettering Cancer Center is an employer and employs more then 250 employees.  Its address is 1275 York Avenue, New York, NY 10021.

## FACTS

5. Plaintiff was hired by Respondent Memorial Sloan-Kettering Cancer Center in or about April 19,2004, as the Regional Administrative Manager. Ms. Diaz was hired to be the Regional Administrative Manager at the Defendant's facility at 777 North Broadway, Sleepy Hollow, New York 10591. Ms. Diaz's responsibilities included but were not limited to the review, development and implementation of administrative systems, to analyze and implement yearly budgets, overseeing the hiring, orientation, training and supervision of administrative and support staff and the coordination of quality assurance, and hospital compliance efforts.

2

6.In or about December 21, 2004, Ms. Diaz was given her first and only evaluation. She received a very good evaluation, and the evaluation stated, *inter alia,* "In her short tenure at MSK Sandy has proven to be assertive, motivated and a fast learner. She has embraced the operational issues at Phelps with enthusiasm and attention to detail. She has adopted a hands-on approach to leading her staff...".

7.When Ms. Diaz was initially hired she was told that all employees were entitled to graduated discipline, to wit; that in regards to disciplining any and all employees, a specific procedure had to be followed, first an employee was to be initially counseled orally, if that was unsuccessful the employee was to be written up, if that was not successful the employee was to be suspended and finally after the first three steps were unsuccessful, the final step was termination. Ms. Diaz was advised that as the Regional Manager she always had to comply with these procedures, and she always did.

8.Specifically, in October 2004, Ms. Diaz was having problems with an employee and she spoke with her supervisor, Joe Liaocono, and asked him how she was supposed to handle the employee. Joe Liaocono told Ms. Diaz that all employees must be given graduated discipline and referred her attention to the MSK on-line rules and regulations which specifically stated the procedures of graduated discipline including but not limited to the above mentioned graduated

procedures. Upon information and belief, the rules required all the rules to be applicable to all employees.

9.As the Regional Administrative Manager, Ms. Diaz was told that all employees of the respondent Center were regulated by the Memorial Sloan-Kettering Cancer Center Employee Handbook (hereinafter "Handbook").

10.The Handbook specifically outlines the rules and regulations for the employees of the Sloan- Kettering. In this regard the Handbook specifically states that a regular employee is an employee whose employment has no specified termination date. In addition, the Handbook states that a Full-Time employee is one who is scheduled to work the standard work week of the department to which he or she is assigned. Ms. Diaz was both a regular and a full time employee.
.

11. Ms. Diaz continued to work for Respondent Memorial Sloan-Kettering Cancer Center without receiving criticism or reprimand until she was summarily terminated on September 27, 2005. Ms. Diaz was not given any reason for her termination and was not accorded the procedures as outlined by the defendant's rules and regulations. In addition,  Ms. Diaz was not given the graduated discipline as all other similarly situated non African-American employees were given.

12. Sloan-Kettering failed to comply with their own rules and regulations

regarding the termination procedures and in this regard they failed to treat Ms. Diaz in the same manner as similarly situated non African-American employees. Ms. Diaz is unaawre of any similarly situated employee that was not reprimanded much less terminated in contravention of the defendant's rule and regulations. In fact, Ms. Diaz was specifically told by the defendant's management that violation of the graduated discipline and termination procedures could result in her being disciplined and possibly terminated when she had to discipline an employee.

13. Upon information and belief, Ms. Diaz's position has been filled by a non African-American employee.

## FIRST CAUSE OF ACTION

14. The actions and omissions of the Defendant in failing to follow its own rules and regulations when said rules and regulation were followed for similarly situated non African-American employees violated the plaintiff's rights under the Equal Employment in Opportunity Act, 42 U.S.C. §2000-e and as a result the plaintiff has been damaged and demands damages including punitive damages to make her whole.

## SECOND CAUSE OF ACTION

15. Plaintiff repeats paragraphs one (1) through fourteen (14) and realleges them as paragraph fifteen (15) herein.

16. The actions and omissions of the Defendant in failing to abide by its own rules and regulations which are complied with for non African-American employees amounted to discriminatory conduct which violated the Plaintiffs rights under New York Executive Law §296 and the Administrative Code of the City of New York § 8-101 et. seq. And as such the Plaintiff was damaged including but not limited to punitive damages for the intentional and blatant acts of the Defendant.

THIRD CAUSE OF ACTION

17. Plaintiff repeats paragraphs one (1) through fourteen (14) and realleges them as paragraph seventeen (17) herein.

18. The actions and omissions of the Defendant in failing to abide by its own rules and regulations which are complied with for non African-American employees violated the Plaintiffs rights under 42 U.S.C. §1981 and as such the Plaintiff has been damaged and demands damages including punitive damages for the Defendant's intentionally discriminatory actions and omissions.

WHEREFORE, the Plaintiff demands:

   1. Injunctive relief to reinstate her to her position;

   2. Compensatory damages ;

   3. Back pay and all attendant benefits from the time she was illegally terminated;

   4. Punitive damages;

5. Costs;

6. Attorney's fees;

7. Pre and Post-judgment interest;

8. Any and all other and different relief that this court deems just and appropriate.

Dated: New York, New York
      September 26, 2006

-

---------------------------------------
Noah A. Kinigstein
Attorney for the Plaintiff
315 Broadway, Suite 200
New York, NY 10007
(212) 285-9300
(3326)